**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GARY E. BRICKEY,

                                        Plaintiff,

                    - v -                                         Civ. No. 9:10-CV-085
                                                                           (FJS/RFT)

SUPERINTENDENT, *Franklin Corr. Facility*;
JOHN/JANE DOE, *Doctor, Franklin Corr. Facility*;
JOHN/JANE DOE, *Nurse, Franklin Corr. Facility*;
JOHN JANE DOE, *Nurse, Franklin Corr. Facility*,

                                        Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

GARY BRICKEY
Plaintiff, *Pro Se*
Great View Motel
2233 State Route 37
Fort Covington, New York 12937

HON. ERIC T. SCHNEIDERMAN                   DOUGLAS J. GOGLIA, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendant Superintendent[1]
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

        *Pro se* Plaintiff Gary Brickey filed this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging the Defendants violated his constitutional rights during his incarceration at Franklin

Correctional Facility when, with deliberate indifference to his serious medical needs, they deprived

him of adequate medical care. Dkt. No. 5, Am. Compl.  Within his Amended Complaint, Plaintiff

did not identify any Defendant by his or her surname.  Instead, he provided the Court with each

---

        [1] Though Plaintiff only identifies this Defendant by his title, service of process was executed upon and accepted
by the current Superintendent of Franklin Correctional Facility, Darwin LaClair.  Dkt. No. 8.  The New York State
Attorney General has made an appearance in this action solely on behalf of Defendant LaClair.  Dkt. No. 10.

Defendant's respective job titles.  Of the four Defendants, service was only accomplished as to Defendant Superintendent Darwin LaClair, who now moves for dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. No. 10.  Plaintiff opposes the Motion. Dkt. No. 11.  As explained more fully below, the Court recommends **granting** Defendant LaClair's Motion to Dismiss and **dismissing** him from this action.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed his civil rights Complaint on January 25, 2010, against two Defendants: the Superintendent of Franklin Correctional Facility and Glenn S. Goord, Commissioner of the New York State Department of Correctional Services (DOCS).  Dkt. No. 1, Compl. at ¶ 3.  Plaintiff also submitted a Motion to Proceed *In Forma Pauperis* (IFP).  Dkt. No. 2, IFP App.  On January 29, 2010, the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, reviewed those filings and granted Plaintiff permission to proceed with this matter IFP.  Dkt. No. 4.  However, citing various inadequacies with Plaintiff's pleading, most notably his failure to attribute personal involvement to either named Defendant in any alleged constitutional violation, Judge Scullin directed Plaintiff, in order to avoid dismissal, to submit an amended complaint that complies with the pleading requirements of Federal Rules of Civil Procedure 8 and 10.  *Id*. at pp. 4-6.

On February 12, 2010, Plaintiff filed an Amended Complaint wherein he amplified some factual allegations, omitted Glenn S. Goord as a Defendant, and added three unidentified Doe Defendants.  Dkt. No. 5, Am. Compl.  In reviewing the adequacy of the amended pleading, Judge Scullin first directed that Glenn S. Goord be dismissed from this action.  Dkt. No. 6, Order, dated Mar. 29, 2010.  He then addressed Plaintiff's inclusion of the Superintendent in this matter, which

he noted appeared to implicate the Superintendent in his supervisory capacity only. *Id.* at p. 2. While acknowledging that Plaintiff's allegations against the Superintendent were "somewhat sparse," he nevertheless allowed for service of the Amended Complaint. *Id.* Judge Scullin based this decision, in part, on the fact that because Plaintiff did not know the identities of the other individuals, Second Circuit precedent dictates that it would be "appropriate to maintain 'supervisory personnel as defendants . . . until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability.'" *Id.* at p. 3 (quoting *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998)). Judge Scullin advised that after Plaintiff has had an opportunity to discover the individual identities, "undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case, . . . but such dismissal is premature where the opportunity to identify those involved has not yet been accorded." *Id.* (quoting *Davis v. Kelly*, 160 F.3d at 921-22) (other citations omitted).

In directing service of the Amended Complaint on the Superintendent, Judge Scullin abstained from rendering any decision as to the merits of Plaintiff's claims. *Id.* at p. 2 n.2. He further admonished Plaintiff to take steps to identify the three other Defendants as service of process could not be accomplished upon them and Plaintiff's case against these individuals could be dismissed in the event they were not timely identified. *Id.* at p. 3.

On April 27, 2010, Defendant Superintendent LaClair, the only Defendant served with process, moved for dismissal of this action against him. Dkt. No. 10. In responding to that Motion, Plaintiff relayed that upon receiving information from DOCS, Plaintiff is able to identify three of the four previously unidentified Defendants as follows: "the unknown Superintendent of [Franklin] is Darwin LaClair; the unknown facility physician is Dr. G. Champagne; and the unknown male

nurse is P.Debiew." Dkt. No. 11, Pl.'s Opp'n at p. 4.  He does not identify the other Doe Defendant.

Though a motion to amend should have been filed in order to properly identify these Defendants, in light of his *pro se* status, we construe Plaintiff's papers as seeking such amendments, which we will grant, and allow Plaintiff to submit a second amended complaint joining these recently identified individuals as defendants. *See infra* Part II.B. In rendering this ruling, the Court notes that no prejudice to Defendants (served or unserved) is apparent at this stage.

### B.  Facts Alleged in the Amended Complaint

The following facts are derived from the Amended Complaint, which, in accordance with the standards of review, must be taken as true.[2]  *See infra* Part II.A & B.

On July 8, 2008, while incarcerated at Franklin Correctional Facility, Plaintiff was directed to move from N-1 Dorm to B-2 Dorm.  Am. Compl. at p. 5.  While moving his belongings, Plaintiff experienced a "severe, sharp pain" in his back and legs, causing Plaintiff to become virtually immobile. *Id*. at pp. 5-6.  Plaintiff notified a corrections officer, who made arrangements for Plaintiff to be seen by medical personnel on emergency sick call. *Id*. at p. 5.  At the facility infirmary, Plaintiff was seen by an unidentified male nurse, who informed Plaintiff that the problem was in his back, not his legs. *Id*.  The nurse, whom we presume for purposes of this Motion only is the unidentified Defendant Nurse Doe, refused to provide Plaintiff with any pain medication or ambulatory assistance, such as a cane or crutches. *Id*.

Plaintiff returned to the infirmary during sick call for the next four days, until he was seen by another nurse, whom Plaintiff identifies as "Nurse P. Debiew" in his Opposition papers. *Id*.; *see*

---

[2] Because we are allowing Plaintiff to amend his Amended Complaint to identify some of the Defendants, we will substitute, where possible, the names of these Defendants into the facts provided by Plaintiff.

*also* Dkt. No. 11 at p. 4.  Nurse Debiew informed Plaintiff that he was suffering from "psyiotic"[3] nerve damage in his back and set up an appointment for Plaintiff to see a doctor on July 28, 2008. Am. Compl. at p. 5.  Nurse Debiew also refused to provide Plaintiff with any pain medication or ambulatory assistance.  *Id*.

On July 23, 2008, as Plaintiff was leaving the bathroom in his dorm, he experienced pain in his legs and fell to the floor.  *Id*.  He was thereafter transported to the infirmary for emergency sick call, where his ankle was x-rayed and determined to be uninjured.  *Id*.  Plaintiff received Bufferin for pain and was issued a pair of crutches.  *Id*.

On July 28, 2008, Plaintiff saw a Doctor, whom he identifies in his Opposition papers as Dr. G. Champagne.  *Id*. at p. 6; Dkt. No. 11 at p. 4.  Dr. Champagne confirmed that Plaintiff suffered from sciatic nerve damage, however, in light of Plaintiff's imminent departure from Franklin, treatment for his condition could not be provided in time.  Am. Compl. at p. 6.  Fifteen days later, on August 12, 2008, Plaintiff was transferred from Franklin to Central New York Psychiatric Center. *Id*.

In addition to complaining that the Defendants failed to provide treatment for his medical condition, Plaintiff asserts that medical personnel also refused to allow him to receive meals in his dorm.  *Id*.  Plaintiff states that from July 8, 2008 through August 12, 2008, the pain he felt inhibited his ability to walk to and from the mess hall, resulting in a loss of sixteen pounds.  Plaintiff seeks

---

[3] The Court surmises, upon information and belief, that Plaintiff is referring to his "sciatic" nerve, or the medical condition "sciatica", which the Court takes judicial notice, pursuant to Federal Rule of Evidence 201(b), is "a syndrome characterized by pain radiating from the back into the buttock and into the lower extremity along its posterior or lateral aspect, and most commonly caused by protrusion of a low lumbar intervertebral disk; the term is also used to refer to pain anywhere along the course of the sciatic nerve." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1493 (28th ed. 1994).  We will refer to Plaintiff's medical condition as sciatica, as does Defendant LaClair throughout his moving papers.

declaratory relief as well as compensatory and punitive damages.

## II. DISCUSSION

### A. Defendant LaClair's Motion to Dismiss

#### 1. Standard of Review – 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)).  Federal courts are "duty bound . . . to address the issue of subject matter jurisdiction at the outset." *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 929 (2d Cir. 1998).  In contemplating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court must "accept as true all material factual allegations in the complaint[,]" though "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196 (2d Cir. 1992) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) & *Norton v. Larney*, 266 U.S. 511, 515 (1925)).  "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) (citations omitted); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  Furthermore, because Plaintiff brings this action *pro se*, his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curium*) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

## 2. *Standard of Review – 12(b)(6)*

On a motion to dismiss for failure to state a claim, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. at 1950-51.

### 3.  *Eleventh Amendment*

Initially, Defendant LaClair moves for dismissal of this action against him, and possibly the other Defendants as well, on the basis that the Court lacks subject matter jurisdiction. According to LaClair, because Plaintiff has only identified the Defendants by their job titles, the Court should construe this action as against the Defendants only in their official capacities and dismiss the action outright on the basis that such suits are barred by the Eleventh Amendment.

Here, the Amended Complaint is silent as to the capacity in which Defendants are being sued.  This silence should not be held against Plaintiff, however.  The Second Circuit has ruled that a "complaint's failure to specify that claims against state officials are asserted against them in their individual capacities does not justify an outright dismissal" on Eleventh Amendment grounds. *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252 (2d Cir.1991); *see also Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) ("[A] plaintiff who has not clearly identified in [his] complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other.").  As the Supreme Court noted in *Kentucky v. Graham*, "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both.  The course of proceedings . . . typically will indicate the nature of the liability sought to be imposed."  473 U.S. 159, 167 n.14 (1985) (internal quotation marks and citation omitted).  This rule is of particular relevance in a case where the plaintiff proceeds *pro se*. *See Mitchell v. Keane*, 974 F. Supp. 332, 338 (S.D.N.Y.1997) (noting that a court must liberally read a *pro se* plaintiff's pleadings); *see also Parker v. Fogg*, 1994 WL 49696, at *1 n.6 (N.D.N.Y. Feb. 17, 1994) (construing the *pro se* pleading liberally as against the defendants in both official and individual capacities, even though the complaint failed to specify therein).

Thus, in light of his *pro se* status, we find that Plaintiff has brought this matter against the Defendants in both their official and individual capacities.  With that finding, we must assess whether the Eleventh Amendment provides a basis for dismissal.

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although by

its terms, the amendment bars suit by citizens of one State against another State, the Supreme Court has held that such amendment similarly bars suits against a State by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the State, including a state agency in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at 98; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984). To the extent a state official is sued for damages in his official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing, *inter alia*, *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

In appropriate circumstances, the jurisdictional bar of the Eleventh Amendment may immunize a state official acting in his or her official capacity. *See In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted). However, under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), a suit may proceed against a state official in his or her official capacity – notwithstanding the Eleventh Amendment – when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*,

482 F.3d at 618 (quotations and citations omitted).

In his Amended Complaint, Plaintiff seeks declaratory relief as well as compensatory and punitive damages.  Am. Compl. at p. 9.  It is not clear from that pleading, however, whether by seeking declaratory relief, Plaintiff is in any way seeking prospective relief.  It also appears that Plaintiff is no longer incarcerated as he was released from DOCS custody on August 12, 2008, to another agency, which, upon information and belief, was Central New York Psychiatric Center.  *See* Ct. Attach. 1; *see also* Am. Compl. at p. 6.  Therefore, any claim for prospective relief would invariably be denied as moot.  *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989) (noting that the prisoner's transfer to another facility renders his claims for declaratory and injunctive relief moot); *Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000) (noting that upon plaintiff's relief from prison, he was "no longer incarcerated under the supervision of any of the named defendants," thus rendering moot his requests for injunctive and declaratory relief).  As such, all claims for relief against all Defendants in their official capacities should be **dismissed** pursuant to the Eleventh Amendment.  However, such claims may be pursued against the Defendants in their individual capacities.

### 4. Fourth Amendment Claims

Plaintiff asserts that the Defendants' actions amounted to a violation of his right, guaranteed by the Fourth Amendment, to be free from unreasonable seizures.  The Fourth Amendment, applicable to the States by way of the Fourteenth Amendment, protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.  While this fundamental protection is not completely lost by prisoners merely as a consequence of their incarceration, prisoners nevertheless do not enjoy the same privacy

rights as non-prisoners since "[l]oss of . . . privacy [is an] inherent incident[ ] of confinement[.]" *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).  It is not clear to this Court how Plaintiff's allegations regarding medical treatment relate in any way to the limited rights he enjoys under the Fourth Amendment.  Nor has he provided any independent factual allegations that could support a plausible claim under the Fourth Amendment.  Therefore, we recommend that Plaintiff's Fourth Amendment claims be **dismissed** as against **all** Defendants.

### 5. Supervisory Liability

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1948 (2009).

Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).  A supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or

custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) was deliberately indifferent to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Wright v. Smith*, 21 F.3d at 501 (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

There is no indication that Defendant LaClair participated directly in the medical decisions rendered by Franklin medical personnel. Nor, despite Plaintiff's conclusory assessment, are there any facts indicating that Defendant LaClair created an unconstitutional policy or custom or allowed for such policies and customs to exist, or that he negligently supervised his subordinates. In fact, there is only one factual allegation included in the Amended Complaint related to Superintendent LaClair and it relates to LaClair's knowledge of the incidents at issue. According to Plaintiff, at some point prior to his release from Franklin, Plaintiff filed an institutional grievance regarding the medical care at Franklin. On September 21, 2008, over one month after his release from Franklin, Plaintiff sent a letter to Defendant LaClair regarding the resolution, or non-resolution, of that grievance. Am. Compl. at p. 6. That letter apparently went unanswered. *Id*. Thus, by Plaintiff's own allegations, Defendant LaClair had no knowledge of the alleged constitutional violations Plaintiff experienced until, at least, September 21, 2008, when Plaintiff was no longer within his care or custody. Furthermore, the fact that Plaintiff may have written a letter does not automatically render the supervisory official responsible for any constitutional violation. *See Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (citations omitted) (ignoring letter is insufficient for personal involvement); *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) (citations omitted) (the wrong must have been capable of mitigation at the time the supervisory official was apprised

-13-

thereof); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) (citations omitted) (receiving letters or complaints does not automatically make a supervisor liable for the denial of medical care).  In sum, we agree that Plaintiff has failed to alleged Defendant LaClair's personal involvement in any alleged wrongdoing.  Now that Plaintiff has identified at least two other Doe Defendants, the notion that the supervisory official should be kept in this action is no longer applicable.  *See* Dkt. No. 6 at pp. 2-3.  Thus, we recommend that Defendant LaClair's Motion to Dismiss be **granted** and he be **dismissed** from this action.

### B.  Identification of Doe Defendants

As noted above, Plaintiff provided the Court with the identities of two of the three remaining Doe Defendants.  We have liberally construed this as a request to amend his Complaint and find that such amendments are proper.  In the event that the within recommendations are accepted and Defendant LaClair is dismissed from this action, we would direct Plaintiff to submit a second amended complaint, identifying the Doe Defendants in the caption and further providing a recitation of the facts with those Defendants' proper names.  The Clerk shall forward Plaintiff's second amended complaint to this Court for review prior to issuing summonses.

Plaintiff is again advised that there still remains a "John Doe" Defendant in this action.  The U.S. Marshals cannot effect service on a "John Doe" Defendant.  In the event that Plaintiff wishes to pursue his claims against this Defendant, he shall take reasonable steps to ascertain his or her identity.  Plaintiff may then file a motion to amend his complaint and seek leave of the Court to add such individual, by name, as a Defendant to this lawsuit.  Plaintiff is further advised that if this individual is not timely served, this action will be dismissed as against him/her.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendant LaClair's Motion to Dismiss (Dkt. No. 10) be **granted** and Defendant LaClair be **dismissed** from this action; and it is further

**RECOMMENDED**, that Plaintiff's Fourth Amendment claims be **dismissed** from this action for failure to state a claim upon which relief can be granted; and it is further

**RECOMMENDED**, that all claims asserted against the remaining Defendants in their official capacities be **dismissed** pursuant to the Eleventh Amendment; and it is further

**ORDERED**, that in the event the above recommendations are accepted by Judge Scullin, Plaintiff should be provided thirty (30) days from the date of Judge Scullin's decision to submit a second amended complaint that identifies the Doe Defendants.  Upon receipt of such amended pleading, the Clerk of the Court shall forward it to the undersigned for review; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   February 16, 2011
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

-16-